■ In the Matter of L. B. R. ENTERPRISES, INC., Doing Business as TUEY'S, Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent.— Proceeding pursuant to CPLR article 78 to review a determination of respondent, the State Liquor Authority, which, after a hearing, (1) sustained all three charges which had been lodged against the petitioner licensee and (2) imposed penalties therefor. Petition granted to the extent that the determination is modified, on the law, by annulling the findings of guilt as to Charges Nos. 2 and 3 and the penalties imposed thereon. As so modified, determination confirmed, petition otherwise dismissed on the merits, without costs or disbursements, and matter remanded to the respondent to determine what portion, if any, of the suspension imposed upon the charge which has been sustained should be deferred. On September 24, 1976 respondent, the State Liquor Authority, instituted a proceeding to suspend petitioner's special on-premises license based upon the following charges: "1) That the licensee violated Section 65 of the Alcoholic Beverage Control Law in that it sold, delivered or gave away, or permitted to be sold, delivered or given away, alcoholic beverages to minors [actually] or apparently under the age of eighteen years on April 28, 1976 and August 6, 1976. 2) That a violation of Section 106, subdivision 5 of the Alcoholic Beverage Control Law occurred on the licensed premises on August 1, 1976 in that consumption of alcoholic beverages was permitted upon such licensed premises more than one-half hour after the start of prohibited hours of sale of alcoholic beverages. 3) That the licensee violated Section 106, subd. 6 of the Alcoholic Beverage Control Law in that it suffered or permitted the licensed premises to become disorderly on August 1, 1976 in that a patron was assaulted in said premises." Petitioner pleaded not guilty to all charges and a hearing was held. During the course of the hearing, petitioner withdrew its plea of not guilty as to the April 28, 1976 incident set forth in Charge No. 1, and entered a plea of "no-contest" with respect thereto. As a result, counsel for the authority moved to delete the August 6, 1976 incident from Charge No. 1 and this motion was granted. At the conclusion of the hearing, the hearing officer sustained Charge No. 1, as amended, as well as Charges Nos. 2 and 3. The authority adopted the hearing officer's findings and imposed the following penalties: on Charge No. 1—suspension of petitioner's license for a period of 20 days, less five days for the plea of "no-contest", for a total of 15 days; on Charge No. 2—a letter of warning; on Charge No. 3— suspension of petitioner's license for a period of 15 days. The total was thus 30 days' suspension (15 days forthwith and 15 days deferred), plus a letter of warning, or a $1,500 fine and a 15-day suspension (deferred) and a letter of warning. Petitioner instituted this proceeding alleging that the authority's

determination on Charges Nos. 2 and 3 was not supported by substantial evidence and that the penalty imposed with respect to Charge No. 1 was excessive. We agree with petitioner as to the substantial evidence question. Turning first to Charge No. 3, the hearing officer found that petitioner's bouncer assaulted an intoxicated, unruly patron on August 1, 1976. The assault, which caused the patron to suffer serious injuries, apparently commenced inside the licensed premises and continued outside in the parking lot. It is true that, "where the licensee's *agent* is instrumental in *creating* the disorder, it is generally not necessary to establish a foreseeable pattern of conduct" *(Matter of Club 95 v New York State Liq. Auth.,* 23 NY2d 784, 785 [emphasis supplied]). Conversely, however, "there [is] no basis in law for holding the [licensee] responsible for * * * a single isolated act by its *employee,* an act which manifestly occurred on the spur of the moment * * * conduct is not 'suffered or permitted' unless '"the licensee or his manager knew or should have known"' of the asserted disorderly condition on the premises and tolerated its existence" *(Matter of Playboy Club of N. Y. v State Liq. Auth.,* 23 NY2d 544, 550 [emphasis supplied]). In the instant case, the hearing officer found that the bouncer was the "licensee's authorized agent to maintain order in the premises". If this finding was intended to bring the case within the ambit of *Club 95 (supra),* then we must reject it, as we find no evidence that the bouncer here was the licensee's "agent", i.e., "an employee left in charge of the premises" (see *Matter of Playboy Club of N. Y. v State Liq. Auth., supra,* p 550.) He was, apparently, nothing more than an ordinary employee of the petitioner (cf. *Matter of Segan Entertainment v State Liq. Auth.,* 56 AD2d 602). Accordingly, we hold *Matter of Playboy Club of N. Y. (supra)* to be controlling. Reviewing this record in accordance with the dictates of *Matter of Playboy Club of N. Y. (supra),* it becomes readily apparent that there is no evidence that the licensee's principal, although on the premises at the time of the incident, "participated in or sanctioned the employee's conduct or that he was even aware of it until it was too late" (see *Matter of Playboy Club of N. Y. v State Liq. Auth., supra,* p 550; see, also, *Matter of Segan Entertainment v State Liq. Auth., supra).* Moreover, it does not appear that the employee actually "created" the instant disorder (cf. *Matter of Club 95 v New York State Liq. Auth., supra).* Under these circumstances, the single isolated incident involving petitioner's employee cannot be said to support the finding that the licensee suffered or permitted the licensed premises to become disorderly (see *Matter of Segan Entertainment v State Liq. Auth., supra).* Substantial evidence is also lacking to support Charge No. 2, permitting the after-hours consumption of alcohol on the licensed premises; the substance of this charge is that a police officer observed *an employee* in the licensed premises at or about 5:15 A.M. on August 1, 1976 drinking from a bottle of beer, the foregoing being in violation of subdivision 5 of section 106 of the Alcoholic Beverage Control Law. In point of fact, however, the officer was only able to testify that he observed the employee through an exterior window at a distance of between 10 to 15 feet drinking from a bottle, and that when he thereafter knocked on the door and gained admittance, he saw the same employee in the process of setting down a bottle which was found to contain beer. The officer never stated that the bottle which he took from the employee's hand was the same bottle which he had observed from the window, nor did he testify that he had never lost sight of the employee during the time it took him to gain entry into the licensed premises. In view of the employee's explanation that he does not drink beer and that he was clearing off tables at the time that the policeman entered, the evidence

adduced was insufficient to establish that the employee had been seen taking a prohibited drink. The after-hours consumption of nonalcoholic beverages is nowhere prohibited. Accordingly, the charge of permitting the after-hours consumption of alcohol on the licensed premises cannot be sustained. We have considered petitioner's remaining contention and find it to be without merit. Gulotta, J. P., Shapiro, Cohalan and Margett, JJ., concur.